1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Travis E. Lynch (SBN 335684)
    Email: lynch@rhmtrial.com
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1862

Steven W. Ritcheson (SBN 174062)
    Email: switcheson@insightplc.com
**INSIGHT, PLLC** 578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (818) 744-8714; (424) 289-9191

*For Plaintiff COMMWORKS SOLUTIONS, LLC*

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

COMMWORKS SOLUTIONS, LLC,

        Plaintiff,

    v.

BROADCOM INC.,

        Defendant.

Case No. _____

**COMPLAINT FOR PATENT INFRINGEMENT**

JURY TRIAL DEMANDED

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant Broadcom Inc. ("Defendant" or "Broadcom") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

|    | Patent No. | Title | Reference |
|----|-----------|-------|-----------|
| 1. | 6,832,249 | Globally Accessible Computer Network-Based Broadband Communication System With User-Controllable Quality of Information Delivery and Flow Priority | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6832249 |
| 2. | 7,177,285 | Time Based Wireless Access Provisioning | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7177285 |
| 3. | 7,463,596 | Time Based Wireless Access Provisioning | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463596 |
| 4. | 7,911,979 | Time Based Access Provisioning System And Process | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7911979 |
| 5. | RE44,904 | Method For Contention Free Traffic Detection | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44904 |

2.     Plaintiff seeks monetary damages.

## PARTIES

3.     CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4.     On information and belief based upon public information, Broadcom is a corporation formed under the Laws of the State of Delaware.

5.    On information and belief based upon public information, Broadcom is headquartered in Palo Alto, California.

6.    On information and belief based upon public information, Defendant has a business location and primary R&D center in this Judicial District at 15101 Alton Parkway, Irvine, CA 92618.  *See Contact Us*, BROADCOM (last visited Apr. 4, 2025), https://www.broadcom.com/company/contact/locations; *see also Investing and Innovating for America's Future*, BROADCOM (last visited Apr. 4, 2025), https://docs.broadcom.com/doc/investing-and-innovating-for-americas-future.

7.    On information and belief based upon public information, Defendant has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Central District of California, and otherwise direct infringing activities to this District in connection with their products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

8.    CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

9.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10.    Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in California and in this District; and (iii) having an interest in, using or possessing real property in California and in this District.

11.    Specifically, Defendant has done business in and have committed acts of infringement in this District directly, through intermediaries, by contributing to and

through its inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this District.

12. Defendant sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Central District of California, and Defendant has committed acts of infringement in the Central District of California, has conducted business in the Central District of California, and/or has engaged in continuous and systematic activities in the Central District of California.

13. Under 28 U.S.C. § 1400(b), venue is proper in this judicial district as to Defendant at least because Defendant has transacted business in this District and committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below.

14. Under 28 U.S.C. § 1391(b)-(d), venue is proper in this judicial district as to Defendant at least because Defendant has transacted business in this District and committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below.

15. On information and belief, as identified above in paragraph 6, Defendant has a regular and established place of business location and primary R&D center in this Judicial District at 15101 Alton Parkway, Irvine, California 92618 and numerous employees located in California.

16. On information and belief, Defendant has authorized sellers and sales representatives that offers and sells products identified in this Complaint throughout the State of California, including this Judicial District, and to consumers throughout this Judicial District.

## **THE ACCUSED PRODUCTS**

17. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

18. Defendant uses, causes to be used, manufactures, provides, supplies, or

distributes one or more Broadcom Systems-on-Chips (SoCs), and/or devices, including, but not limited to the "Accused Products," set forth below:

- Broadcom chips, SoCs, and/or devices implementing **ITU-T G.984 and ITU-T G.9807.1 OLT SoCs**, which all provide (X)G(S)-PON broadband communications networks, including, but not limited to:
  - Broadcom BCM68650,
  - BCM68620,
  - BC55045,
  - BCM68660,
  - BCM6858,
  - BCM55050,
  - BCM68380,
  - BCM68380FKFSBG,
  - BCM68380MIFSBG, and
  - BCM68380IFSBG.
- Broadcom chips, SoCs, and/or devices supporting **Wi-Fi Protected Setup (WPS)** functionality, including, but not limited to:
  - BCM94708RDB (including BCM4708, BCM4366),
  - BCM943241_N10,
  - BCM943224HMS,
  - BCM943241,
  - BCM943236,
  - BCM943241NG1630,
  - BCM94352HMB,
  - BCM943142HM,
  - BCM943142,
  - BCM943236FLAMESRX,
  - BCM94319,

1       o  BCM94313HMGBL,

2       o  BCM943225,

3       o  BCM943224,

4       o  BCM94319SDB, and

5       o  BCM94319SDHMB, BCM94313HMG2L.

6  • Broadcom chips and/or devices and/or software supporting **Wi-Fi Multimedia and**

7  **802.11-2007+** functionality, including, but not limited to:

8       o  BCM4392,

9       o  BCM94375,

10      o  BCM943698,

11      o  BCM94908R43684AX,

12      o  BCM94391,

13      o  BCM94908R43684W6E,

14      o  BCM94912R6715W6ER2,

15      o  BCM94390,

16      o  BCM4398,

17      o  BCM94916R6726W7,

18      o  BCM94361,

19      o  BCM94908TBRH,

20      o  BCM943241_N10,

21      o  BCM943224HMS,

22      o  BCM943241,

23      o  BCM943236,

24      o  BCM94708RDB_NFC,

25      o  BCM943241NG1630,

26      o  BCM94352HMB,

27      o  BCM943142HM,

28      o  BCM943142,

1    o  BCM943236FLAMESRX,

2    o  BCM94352HMB,

3    o  BCM94313HMGBL,

4    o  BCM943225,

5    o  BCM943224,

6    o  BCM94319SDB,

7    o  BCM94319SDHMB,

8    o  BCM94313HMG2L,

9    o  4361b0,

10   o  BCM94358WLPCIEBT_1,

11   o  BCM958535EAP_3,

12   o  BCM4709R4366AC,

13   o  BCM94709R4366AC,

14   o  BCM94356Z,

15   o  BCM94360MC,

16   o  BCM943162ZP,

17   o  BCM943142Y,

18   o  BCM94360MC5,

19   o  BCM94313HMGB,

20   o  BCM943225HMGB,

21   o  BCM943227HM4L,

22   o  BCM94313HMGBiPA,

23   o  BCM943228HM4L,

24   o  BCM (4715NR Access Point),

25   o  BCM943227HMB,

26   o  BCM943228HMB,

27   o  BCM94331PCIEBT3A,

28   o  BCM94319WICED5,

○ BCM94331CSAX,

○ 4360MC (802.11 AC Wireless Adapter),

○ 4706NR2HMC, and

○ Software, including FASTPATH UAP and FASTPATH UWS.

19.    On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described below.

20.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

21.    By letter dated March 5, 2021, addressed to Mr. Ryan D. Phillips, Director and Managing IP Counsel at Broadcom (the "Notice Letter"), Defendant received notice of its infringement of CommWorks' patents, including the Asserted Patents.

**COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 6,832,249</u>**

22.    CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

23.    For purposes of this Count, the term "Accused Products" shall mean ITU-T G.984 and ITU-T G.9807.1 OLT SoCs, which provide (X)G(S)-PON broadband communications networks, such as, for example, the Broadcom BCM68650.

24.    The USPTO duly issued U.S. Patent No. 6,832,249 (the "'249 patent") on December 14, 2004, after full and fair examination of Application No. 09/860,801 which was filed on May 18, 2001.  The '249 patent is entitled "Globally Accessible Computer Network-Based Broadband Communication System With User-Controllable Quality of Information Delivery and Flow Priority."

25.    CommWorks owns all substantial rights, interest, and title in and to the '249 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

26.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for

infringement of the '249 patent.

27.     The claims of the '249 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

28.     The written description of the '249 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29.     Defendant has directly infringed one or more claims of the '249 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 38 and 46 of the '249 patent, as detailed in **Exhibit A** (Evidence of Use Regarding U.S. Patent No. 6,832,249-Optical Line SoCs) and **Exhibit B** (Evidence of Use Regarding U.S. Patent No. 6,832,249-Optical Network SoCs) to this Complaint.

30.     For example, Defendant has infringed at least claims 38 and 46 of the '249 patent by providing a system for providing network communications.  *See* Exhibit A and Exhibit B.  The system for providing network communications comprises a multi-layered network having a plurality of Open System Interconnection (OSI) reference model layers functioning therein.  *Id.*  The system further comprises a network monitor coupled to the multi-layered network, wherein the network monitor is adapted to: monitor at least one OSI reference model layer functioning in the multi-layered network.  *Id.*  The system further determines that a quality of service event has occurred in the multi-layered network.  *Id.*  The system further determines that the quality of service event occurred at layer N in the OSI reference model.  *Id.*  The system comprises a network controller coupled to the multi-layered network and the network monitor, wherein the network

controller is adapted to: respond to the quality of service event in the multi-layered network by changing the network provisioning at a layer less than N. *Id.*

31. From March of 2021 until its expiry, Defendant had also indirectly infringed one or more claims of the '249 patent by inducing others to directly infringe said claims. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '249 patent by providing or requiring use of the Accused Products. Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '249 patent, including, for example, claims 38 and 46. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '249 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '249 patent.

32. From March of 2021 until its expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '249 patent. Defendant had contributed to the direct infringement of one or more of the claims of the '249 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '249 patent, including, for example, claims 38 and 46. The special features constituted a material part of the invention of the claims of the '249 patent and were not staple articles of commerce suitable for substantial non-infringing use.

33.     Defendant had knowledge of the '249 patent when it received the Notice Letter in March of 2021.

34.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

35.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

36.     Defendant's direct infringement of one or more claims of the '249 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent

37.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,177,285

38.     CommWorks repeats and re-alleges the allegations in paragraphs 1-21 above as though fully set forth in their entirety.

39.     For purposes of this Count, the term "Accused Products" shall mean any Broadcom chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, BCM94708RDB.

40.     The USPTO duly issued U.S. Patent No. 7,177,285 (the "'285 patent") on February 13, 2007, after full and fair examination of Application No. 10/961,959 which was filed October 8, 2004.  The '285 patent is entitled "Time Based Wireless Access Provisioning."

41.     CommWorks owns all substantial rights, interest, and title in and to the '285 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

42.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '285 patent.

43.    The claims of the '285 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

44.    The written description of the '285 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

45.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '285 Patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

46.    The invention of the '285 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '285 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned

by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49. The invention of the '285 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '285 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

47.     Defendant has directly infringed the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1 and 22 of the '285 patent, as detailed in **Exhibit C** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,177,285).[1]

48.     For example, Defendant has infringed at least claims 1 and 22 of the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a process for provisioning between a wireless device and a network. *See* <u>Exhibit C</u>. The process for provisioning comprises the step of tracking an operating parameter of the wireless device within a service area, wherein the operating parameter of the wireless device comprises an onset of a signal transmission of the wireless device. *Id.* The process for provisioning further comprises the step of initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval. *Id.*

---

[1] In addition to Independent Claims 1 and 22, <u>Exhibit C</u> presents allegations of infringement of dependant claims 3, 4, 5, 6, 7, 8, 9, 10, 11, 23, 24, 25. 26, 27, 28, 29, 30, and 32.

49.    From March of 2021 until its expiry, Defendant had also indirectly infringed the '285 patent by inducing others to directly infringe one or more claims of the '285 patent.  Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '285 patent by providing or requiring use of the Accused Products.  Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '285 patent, including, for example, claims 1 and 22.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '285 patent and with the knowledge that the induced acts constitute infringement.  Defendant had been aware that the normal and customary use of the Accused Products by others would infringe the one or more claims of the '285 patent.

50.    From March of 2021 until its expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '285 patent.  Defendant had contributed to the direct infringement of one or more claims of the '285 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '285 patent, including, for example, claims 1 and 22.  The special features constituted a material part of the invention of the claims of the '285 patent and were not staple articles of commerce suitable for substantial non-infringing use.

51.    Defendant had knowledge of the '285 patent when it received the Notice Letter in March of 2021.

52. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

53. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

54. Defendant's direct infringement of one or more claims of the '285 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

55. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 7,463,596</u>

56. CommWorks repeats and re-alleges the allegations in paragraphs 1-21 above as though fully set forth in their entirety.

57. For purposes of this Count, the term "Accused Products" shall mean any Broadcom chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, BCM94708RDB.

58. The USPTO duly issued U.S. Patent No. 7,463,596 (the "'596 patent") on December 9, 2008, after full and fair examination of Application No. 11/673,513, which was filed on February 9, 2007. The '596 patent is entitled "Time Based Wireless Access Provisioning."

59. CommWorks owns all substantial rights, interest, and title in and to the '596 patent, including the sole and exclusive right to prosecute this action and enforce the '596 patent against infringers and to collect damages for all relevant times.

60. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for

infringement of the '596 patent.

61.    The claims of the '596 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

62.    The written description of the '596 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '596 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

64.    The invention of the '596 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '596 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.  *Id.* at col. 3:42-

49.  The invention of the '596 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:50-58.  Moreover, the structure of the devices described in the '596 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

65.     Defendant has directly infringed one or more of the claims of the '596 patent by making, using, offering to sell, selling, and/or importing the Accused Products.  Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1 and 16 of the '596 patent, as detailed in **Exhibit D** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,463,596).[2]

66.     For example, Defendant, using the Accused Products, has infringed at least claims 1 and 16 of the '596 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a process for associating devices.  *See* Exhibit D.  The process for associating devices comprises the step of tracking an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device.  *Id.*  The process for associating devices further comprises the step of automatically associating the first device with at least one other device if the tracked operating parameter occurs within a time interval.  *Id.*

67.     From March of 2021 until its expiry, Defendant had also indirectly infringed one or more of the claims of the '596 patent by inducing others to directly infringe said

---

[2] In addition to Independent Claims 1 and 16, Exhibit D presents allegations of infringement of dependant claims 2, 3, 4, 5, 6, 7, 8, 9, 17, 18, 19, 20, 21, 22, 23, and 24.

claims.  Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more of the claims of the '596 patent by providing or requiring use of the Accused Products.  Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '596 patent, including, for example, claims 1 and 16.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '596 patent and with the knowledge that the induced acts constitute infringement.  Defendant had been aware that the normal and customary use of the Accused Products by others would infringe the '596 patent.

68.    From March of 2021 until its expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more of the claims of the '596 patent.  Defendant had contributed to the direct infringement of one or more of the claims of the '596 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '596 patent, including, for example, claims 1 and 16.  The special features constituted a material part of the invention of the claims of the '596 patent and were not staple articles of commerce suitable for substantial non-infringing use.

69.    Defendant had knowledge of the '596 patent when it received the Notice Letter in March of 2021.

70.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the

patents of others, and thus have been willfully blind of CommWorks' patent rights.

71.    Defendant's actions are and were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

72.    Defendant's direct infringement of one or more claims of the '596 patent was and had been willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

73.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 7,911,979</u>

74.    CommWorks repeats and re-alleges the allegations in paragraphs 1-21 above as though fully set forth in their entirety.

75.    For purposes of this Count, the term "Accused Products" shall mean any Broadcom chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, BCM94708RDB.

76.    The USPTO duly issued U.S. Patent No. 7,911,979 (the "'979 patent") on March 22, 2011, after full and fair examination of Application No. 12/323,399 which was filed on November 25, 2008.  The '979 patent is entitled "Time Based Access Provisioning System And Process."  A Certificate of Correction was issued on July 19, 2011.

77.    CommWorks owns all substantial rights, interest, and title in and to the '979 patent, including the sole and exclusive right to prosecute this action and enforce the '979 patent against infringers and to collect damages for all relevant times.

78.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '979 patent.

79.    The claims of the '979 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

80.    The written description of the '979 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

81.    For example, at the time of the invention wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '979 patent at col. 3:19-31.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:32-41.

82.    The invention of the '979 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:42-46.   The invention of the '979 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.  *Id.* at col. 3:47-53.  The invention of the '979 patent further improved upon existent provisioning systems

by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:54-62.  Moreover, the structure of the devices described in the '979 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

83.    Defendant has directly infringed the '979 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.  Defendant has directly infringed either literally or under the doctrine of equivalents, at least claims 1, 14, and 19 of the '979 patent, as detailed in **Exhibit E** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,911,979).[3]

84.    For example, Defendant, using the Accused Products, has infringed at least claims 1, 14, and 19 of the '979 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a provisioning process performed by a provisioning system having provisioning logic.  *See* Exhibit E.  The provisioning process performed comprises tracking, by the provisioning logic, an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device.  *Id.*  The provisioning process performed in the Accused Products further comprises sending a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval.  *Id.*

85.    From March of 2021 until its expiry, Defendant had also indirectly infringed one or more claims of the '979 patent by inducing others to directly infringe said claims.

---

[3] In addition to Independent Claims 1, 14, and 19, Exhibit E presents allegations of infringement of dependant claims 2, 4. 5, 6, 7, 8, 9, 11, 12, 13, 15, 17, 18, 20, 21, 22, 24, 26, 27, 28, 30, 31, and 32.

Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '979 patent by providing or requiring use of the Accused Products. Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '979 patent, including, for example, claims 1, 14, and 19. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '979 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe the '979 patent.

86.     From March of 2021 until its expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '979 patent. Defendant had contributed to the direct infringement of the '979 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '979 patent, including, for example, claims 1, 14, and 19. The special features constituted a material part of the invention of the claims of the '979 patent and were not staple articles of commerce suitable for substantial non-infringing use.

87.     Defendant had knowledge of the '979 patent when it received the Notice Letter in March of 2021.

88.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the

patents of others, and thus has been willfully blind of CommWorks' patent rights.

89.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

90.    Defendant's direct infringement of one or more claims of the '979 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

91.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. RE44,904

92.    CommWorks repeats and re-alleges the allegations in paragraphs 1-21 above as though fully set forth in their entirety.

93.    For purposes of this Count, the term "Accused Products" shall mean any Broadcom chips and/or devices and/or software supporting Wi-Fi Multimedia and 802.11-2007+ functionality, including, for example, BCM4392.

94.    The USPTO duly and lawfully reissued U.S. Patent No. RE44,904 (the "'904 patent") on May 20, 2014.  The '904 patent is entitled "Method For Contention Free Traffic Detection."

95.    CommWorks owns all substantial rights, interest, and title in and to the '904 patent, including the sole and exclusive right to prosecute this action and enforce the '904 patent against infringers and to collect damages for all relevant times.

96.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '904 patent.

97.    The claims of the '904 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed

inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

98.    The written description of the '904 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

99.    For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all."  '904 Patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found.  *Id.* at col. 1:63-2:2.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols.  *Id.* at col. 2:5-8.  All the frame headers and protocols which can be included in the data frames transmitted *via* the network had to be known, hence, the amount of information needed for identifying the data was huge.  *Id.* at col. 2:8-14.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP).  *Id.*  Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority.  *Id.* at col. 2:20-25.

100.    The invention of the '904 Patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP.  *Id.* at col. 2:29-32, 3:2-4, 3:52-53.  The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols.  *Id.* at

col. 2:62-65.  The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device.  *Id.* at col. 3:5-8, 3:14-21.  A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network.  *Id.* at col. 3:22-31.

101.    Defendant has directly infringed the '904 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above. Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '904 patent, as detailed in **Exhibit F** to this Complaint (Evidence of Use Regarding U.S. Patent No. RE44,904).

102.    For example, Defendant, using the Accused Products, has infringed at least claim 1 of the '904 patent by performing a method comprising extracting a bit pattern from a predetermined position in a frame. *See* <u>Exhibit F</u>.  The method further comprises comparing said extracted bit pattern with a search pattern.  *Id.* The method further comprises identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  *Id.*  The method further comprises forwarding said received frame to a high priority queue in case said frame is detected to be a high priority frame during a special period for sending priority traffic.  *Id.*  The method further comprises adjusting the duration of the special period for sending priority traffic according statistic information regarding sent priority frames.  *Id.*

103.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JURY DEMAND**

104.     CommWorks hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

105.     CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

a.   Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

b.   Judgment that Defendant accounts for and pays to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

c.   Judgment that Defendant's infringements of the '249, '285, '596, and '979 patents during their lives be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.   Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

e.   That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>April 7, 2025</u>                      Respectfully submitted,

<u>/s/ Steven W. Ritcheson</u>

Steven W. Ritcheson (SBN 174062)
**INSIGHT, PLLC**
578 Washington Blvd., #503
Marina del Rey, California 90292
Telephone: (818) 744-8714; (424) 289-9191
Email: swritcheson@insightplc.com

Travis E. Lynch (SBN 335684)
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1862
Email: lynch@rhmtrial.com

*Attorneys for Plaintiff COMMWORKS SOLUTIONS, LLC*

**List of Exhibits**

A. Evidence of Use Regarding U.S. Patent No. 6,832,249 (Optical Line SoCs)

B. Evidence of Use Regarding U.S. Patent No. 6,832,249 (Optical Network SoCs)

C. Evidence of Use Regarding U.S. Patent No. 7,177,285

D. Evidence of Use Regarding U.S. Patent No. 7,463,596

E. Evidence of Use Regarding U.S. Patent No. 7,911,979

F. Evidence of Use Regarding U.S. Patent No. RE44,904

**List of Attachments**

- Civil Cover Sheet